Carolina Youth Action Project v. Wilson. And Mr. Smith, whenever you're ready, we'll hear. May it please the Court. Of course, I will certainly do my best to answer any questions that this Court has. But what I would like to address first is why we believe that these statutes meet whatever standard of vagueness analysis is applied to them. As the Court knows, there was a lot of discussion of that in our briefs, and we rest on our briefs. I'll be glad to answer any questions on it. But we believe that regardless of which standard, OFMA or fair notice or plainly legitimate sweep standard applies, these statutes meet that standard. The disorderly, the disturbing the school statute has got limitations imposed on it within the statute itself and also by the South Carolina Supreme Court in the Amir case. The Amir case said that to prosecute somebody under that statute, it must be an offense that disturbs the learning environment. Can I ask you a question about Amir? And I think it goes to a lot of the way I'm thinking about this case. So, we held in Kenny that Amir doesn't really purport to announce a limiting construction of the statute. It comes up in a different context. That's not what it's doing. Are we bound by Kenny? Um, I looked at that, Your Honor, and I do not believe so. I think that that was limited just to analyzing the cases for purposes of determining standing. Anything beyond that, I think, would be dicta because what Amir holds would be going to the Amerits of the case. So, I think that this Court has the discretion to view Amir differently as to that without overruling prior panel decision. Amir was an overbreath case, but not a vagueness case. It didn't reach vagueness, but the disturbed the learning environment standard that they found applied to that statute is something that would apply regardless of whether it's overbreath or vagueness. And it's certainly consistent with what the statute says it is. It's a disturbing the school statute. So, it's not a leap from there to say conduct must disturb the learning environment. It also, under the terms of the statute, must be willful or unnecessary. The plaintiffs' pellies contend that unnecessarily is vague, but I think by analogy, we can look to the football penalty of unnecessary roughness. It's not just any roughness in a football game. It's roughness that's unnecessary. But counsel, I thought your argument about willfully or unnecessarily was that there's a mens rea requirement in this statute. Well, it certainly requires a criminal level of conduct in that terms. If you look at the whole statute. Just so I understand, I thought in your brief, tell me if I misread your brief, you were arguing that willful is a mens rea requirement for this statute. Is that not your position? It does have to be willful. That would be a mens rea requirement. I don't understand that. If it says it has to be either willful or unnecessary, how is willfulness a requirement? Why isn't it sufficient if it's unnecessary? It does not have to be both. It can be unnecessary. So, then it doesn't have to be willful. It does not have to be. If it is willful, that meets the terms of the statute. But it doesn't have to be willful. It does not have to be willful. So, there is no mens rea requirement. Well, I think when unnecessarily requires. You think unnecessarily is a mens rea requirement? It requires a heightened level of misconduct. But it does not have anything to do with mens rea. Well, it doesn't unnecessary in this context mean gratuitous? Yes. And actually in Bartlett's synonyms book, not Bartlett's, there's a synonyms book that says unnecessarily is willful. And while the dictionary definition, I didn't see it there. I looked up just one dictionary. But the synonym was unwillful. But if you read it in context, when you say unnecessarily disturbs, it seems to me that's gratuitous. I agree with you, Your Honor. And I think that it was certainly not intended to lower the standard below willfulness. It was to address something that was gratuitous. If a student injures himself in class and says, ouch, that may be disturbing the school, the learning environment, but it's not willful or unnecessary. If a student yells out some word in the middle of the class that is completely unnecessary or a volume that's unnecessary, then that might, that would be unnecessary. That would be disturbing to the environment. Can I ask you that? So you just brought up the example of a student who yells out something during class, which from my recollection of being a student is not an infrequent occurrence. So what is the difference in the state's view between criminal disorderly yelling something out of class and standard variety you get sent to the principal's office yelling out something unnecessary in class? How is anyone supposed to know where that line is? Well, I think that, well, first of all, it has to be unnecessary. And words alone are not punishable unless they are fighting. I can literally summon to mind dozens of examples of grade school through high school where students did something in class that by any conceivable definition is unnecessary. Well, I think you have to look at whether it's really disturbing to the learning environment. If it's like just one utterance or something like that, that's probably not disturbing. But this is a criminal statute. It's probably not disturbing. I don't understand. Is that the best we can do in terms of answering Judge Heitens' question? For kids on the ground, they should just know if you yell once, that's probably not going to get you sent to prison. It might, but probably not. Well, I think you have to look at the whole context of this statute and look at the whole as the courts do when they're construing statutes, that it's intended to reach a criminal level of misconduct. And apparently, most students in South Carolina, more than 99% of them get it. Because in the last reporting year, 2019, 2020, less than one-seventh of 1% of the students were charged under here. And apparently, most citizens in Chicago got the loitering statute. It issued moralis. And that's not enough to prevent a statute for being unconstitutionally vague, is it? And isn't the concern, like the fact that most students get it, the concern that we identified in Kenny is that most students probably sit there and don't say anything because they don't know when they open their mouth whether they're going to prison or not. The fact that people can censor themselves and chill their own speech to avoid coming close to a line that hasn't been defined for them is not a helpful thing. It's the problem, as we explained in Kenny. Well, I think that the chilling of the speech is that the speech is not chilled because it's limited to fighting words. Words alone cannot be punishable unless they're fighting words. And I think beyond just these statistics of less than one-seventh of 1% of the students have been charged, these are old statutes. The disturbing the school statute in pertinent part has been in effect for over 100 years. The disorderly conduct statute has been in effect in pertinent part for over 70 years, and they have never once been overturned. So- Do you know how long a whole bunch of loitering statutes have been in effect before they were declared unconstitutional? No, I don't, Your Honor. I suspect it was a really long time. But I think you've got multiple factors here to uphold the disturbing the school statute. The words alone, which I've mentioned, the statistics, and the fact that the statutes have not been overturned. I'll be glad to answer any other questions about that statute, but I'd also like to talk about the disorderly conduct statute too. Our position, it requires a criminal level of misbehavior. It requires, punishes a person for conducting himself in a disorderly or boisterous manner. I believe the plaintiffs focus on the word boisterous. But what it looks through the statute as a whole, it is looking to a criminal degree of misconduct. It punishes- Counselor, I just want to make sure I'm understanding because I'm confused. This is a criminal statute. So it just seems it's sort of circular to say we define it, like the thing that puts people on notice and the thing that gives standards to the school resource officers who are enforcing this is that it should only be applied when the behavior reaches a criminal level of conduct. I mean, that's the whole question in the case. These students need to know when will my behavior reach that level of conduct. So I- Well- Yeah, that's my concern. I understand your question, Your Honor. And we would- This is the as-applied challenge, right? Well, Your Honor, we take the position that although they call it an as-applied challenge, it is functionally a facial challenge because it applies to 800,000- I understand that, but it determines our analysis. And as I understand that both your colleague on the opposite side and the district court concluded that this particular challenge was not a facial challenge, but an as-applied challenge. Well, we respectfully disagree with that, but regardless- Well, let's assume it is. Whose conduct are we measuring then? Well, Your Honor- It's SP's, right? It would be student conduct, but there is a variety of student conduct here. We set forth- I thought it was only SP. It was the only plaintiff charged with disorderly conduct. I believe so, Your Honor. And the facts of her circumstances are she was being escorted, refused to leave the library on the orders of the principal, and then had to be escorted, and then said to the principal, F-you, and then yelled to the whole library, F-you? Yes, Your Honor. Okay. We believe that's punishable under this statute. Looking at the whole statute, it punishes gross intoxication, not just intoxication, gross intoxication. It punishes discharge of a firearm near a school or on a highway without just cause. And I believe that is also limited by intoxication, too. So it requires a heightened level of misconduct before it falls under the statute. And disorderly, boisterous manner would certainly require a heightened level of misconduct. Students would be on notice that they have to meet a heightened level of disorderliness, boisterousness, essentially common sense. Can you tell- Could you tell a student- Let's put to one side the students. What about the school resource officers? Can you give them any more concrete guidance? And it has to be a heightened level. That seems self-evident. Instead of going to detention, you're going to prison. Probably it requires something heightened. Can you be any more concrete than that? Just say I'm a school resource officer. I'm like, I don't know. He shouted in class. Does he go to detention? Does he go to prison? What do you tell the student resource officer? If you look at Captain Reinhardt's testimony- No, I'm just- What advice, what can you tell me is the advice that a student resource officer ought to get beyond heightened? That he would look to the totality of the circumstances. What was going on with the student? Was it words alone? If so, they would have to be fighting words. If it was something that was significantly disruptive, that would be something that could be taken into account. Would you agree with me that it's not super common to define a criminal offense based on the totality of the circumstances test? Well, that's what the courts apply, respectfully, Your Honor, to- I'm just trying to think of other crimes where the difference between criminal and non-criminal conduct is in all things considered totality of the circumstances test. Well, Your Honor, I can't think of a particular example right now, but I think when you look at this statute as a whole, when it punishes gross intoxication, firing a weapon while intoxicated- I don't think there's an argument, right, that the subsection about firing a weapon while intoxicated is fake or is there? I'm sorry. No, there's not, Your Honor. It's just those are factors that show that there is a heightened level of misconduct required. So what you might- I don't want to put words in your mouth. So what you might tell your student resource officer is only conduct that reaches the level of firing a gun while intoxicated? No, Your Honor. Okay. It would have to be disorderly that is of a height- So that example really doesn't help. So we believe that that informs what level of conduct is required. And I think- But it doesn't have to be that high. It doesn't have to be as disorderly as firing a gun while intoxicated. You're not saying that, that that example gives us the limit. There are other kinds of misconduct beyond that. Okay, but we don't know which kind. Other types of misconduct beyond being grossly intoxicated. But I think that you do have to consider those factors when you consider this one. And the cases have said that the fact that law enforcement officers or even courts might disagree as to how a statute applies does not make it invalid. And we believe there's sufficient guidance in the case law, in these statutes to uphold that. We also, I'll be glad to answer other questions on that. No, I think we're through the red light and you do have some rebuttal coming. All right, thank you. Yeah. All right. Mrs. Hinder? Good morning, Your Honor. Sarah Hinder on behalf of plaintiff's appellees. The concern with vagueness under the due process clause is not whether or not the subject matter of arrests is a significant concern that the public might want to address. Or whether or not an officer exercise their discretion appropriately in an individual case. Rather, vagueness points to the requirement that the legislature spell out through the law itself, objective standards of conduct that permit for even handed enforcement and provide notice to the individuals in this case school children of when their conduct can be subject to criminal penalties. There are additionally important factors in this vagueness case. As Your Honors recognized, the penalties under this statute are criminal in nature. The conduct covered by the statute also incorporates important First Amendment speech and expressive conduct. And it also regulates school children as it's applied and not, for example, a knowledgeable business entity that could be expected to consult business regulations before acting. So all of these factors caution additional concern in examining these laws for vagueness. And what we have here in this case, and as the district court recognized, school children are criminalized for being under the terms of the statute, disorderly, or boisterous, and under the disturbing school statute, disturbing, obnoxious, interfering, and loitering. And these are terms, particularly in the school context, that do not give an objective standard. So in schools, as our briefing argues, there is an expectation that students may sometimes disobey school rules, that they might be considered by adults in authority to be disorderly or boisterous. And there's expectations for how a school will interact with a child and address those behaviors. That's a unique condition of the school and school-child relationship. And there is no way within the terms of the statute for anyone, for a child or for a police officer, to decide when disorder of a child rises to the level of criminal. And the terminology suggested of a criminal degree of misconduct or significant disorder are merely additional subjective glosses. They don't provide an objective identification of conduct that the where the law has been enforced, that regardless of one's personal philosophy on enforcement and intervention would indicate that the South Carolina legislature intended for this conduct of a school child to be subject to criminal penalties. And that is the fundamental concern under the enforcement of each of these laws against students. And counsel, you're sort of focusing on application, I guess, of the disorderly conduct law to school children. And when you say that your case, I think you argue that this is an as-applied challenge. You mean as applied to the class in this case, which is all K-12 students, is that right? Yes, Your Honor. We sought and received class certification and specifically posed the legal question to the court of the application to K-12 students in the school setting. And the court, the district court, consistent with what this court identified in the White Coat case, looked at the factors that govern the contours of an as-applied challenge. Whether or not the application should be reviewed by the circumstances and the individual to which it's applied. And it tailored its remedy similarly according to that scope of application it reviewed. Does it matter to your case whether we view this? I mean, it is an as-applied challenge, but as applied to thousands of people. So, does it matter to you whether we consider this as applied or facial? Does it make a difference to the analysis? It seemed like everyone conceded below it wouldn't really make any difference. The legal standard will be the same regardless. I think the difference is just that the plaintiffs have asked the court only to look at the statute in this particular context, which allows the court additional factual and particularized consideration to rule in the narrowest sense. Right, because this statute can still be applied as under this injunction, the statute, you can still apply it outside the school context. Someone else can be arrested for whatever it was being boisterous. Yes, that's okay. We do, and as applied, we look at the facts of the particular case, right? To the extent that they color the- Not color, there's been a charge against somebody for particular conduct. We don't go down gratuitously looking for statutes and throwing them out. And as applied, we look at the facts of the particular case, and in class action, you can look at the class representative. You have to start with the class representative in order to identify the class. That's correct, Your Honor. And in this case, the class representative is one person. It's a female, SP. The class representative is SP as well as DD, Your Honor, but I think that- Well, DD just did school disturbance. The disorderly conduct is only represented by, I understand it, by SP. Yes, Your Honor, and- DS was charged with school disturbance. DD was charged with school disturbance, and SP was charged with disorderly conduct. I think, Your Honor, the important issue, which was directly considered also in this court's standing, is that the class plaintiffs, representatives, and all members of the class aren't challenging the application of the law in the past. The class members can't do the challenging. I mean, the class is represented by the representative parties, and the representative party's conduct has to be typical and common for the class. I mean, this is just fundamental Rule 23 stuff. So, the question is, I know you prefer not to do that. It seems to me you just want a legislative veto in the third branch, but we got to have a case of controversy. And in this case, with respect to disorderly conduct, the class representative is SP. And we look at SP as regardless of whether it is, she gets, in her circumstances, to represent a class of persons similarly situated. And she has alleged she's representing a person, a class similarly situated. Now, the fact that the class includes people that aren't even threatened with enforcement of the law is a significant problem. But I don't want you to answer that question. I really want to focus on the analysis in an as-applied challenge to a statute enforced against SP. Yes, Your Honor. So, one part of the enforcement is the threat of enforcement ongoing. It wasn't a threat. She was charged. Okay. But if we take the charges against SP, I think that the question here is not, again, whether or not one individual or another would believe that she deserved to be arrested. The question is whether... The question is whether the statute as applied to her was unconstitutional. Yes, Your Honor. And the question is... And based on vagueness. Whether it's clear and objectively clear that there was particular conduct in SP's case that was objectively disorderly, objectively boisterous. And there's simply no particular letter of the law that would allow someone to objectively determine that. And this is similar to what the Supreme Court found in USB Johnson. There might be certain violent crimes that a vast majority of people would agree without a question are violent. But the problem is... She was charged with disorderly conduct. What were the proceedings thereafter? She was charged and adjudicated delinquent. And so, the argument has to be that that proceeding went through, I suppose, a level of process and that the statute applied to her and her circumstances was unconstitutionally vague. There wasn't a question of vagueness raised in her juvenile adjudication. But again, it's important to note that the plaintiffs in SP did not challenge or seek to vacate any condition of her adjudication. The plaintiffs are seeking... Not the plaintiff. We have a class representative. Understand the class action. Class action is not all these other people in court. They are represented by the representative party. And their situation is adjudicated by the representative party because they are similarly situated. So, we have to start on this as applied in a lawsuit brought by SP alleging that the disorderly conduct as applied to her was unconstitutionally vague. Your Honor, so respectfully, this district court found that SPs had standing to challenge the standard. Thereafter, the question of class representative is whether or not the class representative raises common questions of law. And her case is typical. And can reach common conclusions in any number of any one of those things can be grounds for a class class certification. I'm sorry, you have to go back and read 23A. You have to meet all four criteria also, in addition to 23A. It's not to the general notion that you have common questions. And within the district court's discretion found that there were a common consideration that each student attends school under the threat of enforcement under these laws. Each plaintiff and class member... We have a specific threat of enforcement according to the Supreme Court or standing to challenge a criminal statute. Yes, Your Honor. And this court did find that to be the case specifically regarding SP. So, every person in that school is specifically threatened with enforcement of disorderly conduct. That's what you have to be alleging. Yes, that is what we allege, Your Honor. And it shows their attendance at school, which school inevitably involves, for example, boisterousness, which could govern and has been applied to speech and conduct in a school cafeteria, which, as we know from the Supreme Court's recognition in Tinker, is an important place where students engage in fundamental speech rights. And how this statute can objectively determine what is criminally boisterous versus permissible or subject to school intervention is just not present in the statute itself. And as my esteemed opposing counsel pointed out, these statutes are many hundreds of years old. We are not looking here at... And they've been enforced for hundreds of years, including by the Supreme Court. And we're not looking here at statutes that were crafted recently with a specific intent and focus on addressing school conduct. In fact, there's no reason to believe that when the legislature enacted these terms that they meant to address these things. And the problem is that they're far too open-ended, particularly in this school context. And so, it may well be that the South Carolina legislature and the community of South Carolina through the legislature could determine that it seeks to regulate student conduct in some particular way, including criminal law. But to do that, it must establish objective standards in the law that makes clear that it intends for particular types of conduct in school to be criminalized. Otherwise, each act of enforcement requires a subjective judgment. Whether or not that subjective judgment is handled with appropriate discretion or not, each act is too dependent on subjective decision-making. I'll turn now to the question of the scope of relief. Just to note that after finding a constitutional violation here, the district court was well within its remedial discretion to remedy the violation found and directly contoured the relief to the harm found. So, for example, at point appendix 937 through 38, the court recognizes the continuing and ongoing harm, including adverse housing and education consequences. And defendants in the reply brief admit that the court has authority to issue class-wide relief as well as expungement, just not both on the facts of this case. But that's speaking to the district court's discretion here. And there's no case identified in which a circuit court overturned a district court's discretion in determining whether or not expungement relief... the individuals who are charged. Did any of those three raise constitutional challenges to their charges? Well, Your Honor, both DS and DD had the charges against them dropped. So, in particular, without standing as was found in this case, they wouldn't have had an opportunity to raise those constitutional challenges. And SP, did SP raise a constitutional? To my knowledge, no. I wasn't her counsel in that case. Counsel, can I ask you a question about the expungement order or injunction? I know we're using expungement as kind of a short form. What is the district actually required to do? It's not retain or use the records? Thank you, Your Honor. Yes, the expungement is a shorthand here. And the relief is tailored particular to South Carolina statute that governs expungement. And that does not require the destruction of records. The principal relief is against the use of those records against students in the future. Is there a process in the statute, the expungement statute that has to be followed? If an individual were to seek expungement on the basis of their unique circumstances through South Carolina law, there is a process. There's separately a process for how records will be handled once expunged. In this case, the expungement flows from the finding of an unconstitutional criminal statute. I understand, but the question is, if you have a person whose statute has been found unconstitutional, they want to go and have it expunged, what do they have to do? It is expunged by order of the district court. What's the process? They make an application and then what happens? No, it's by direction of the district court. However, as indicated in the court's order at joint appendix 948- No, I'm asking you under the expungement statute in South Carolina. You said there's a process. I'd like to know the process. Well, if an individual were to seek expungement in South Carolina as a juvenile, they would have had to reach the age of 18. They would have to have no other conviction on their record and they'd have to pay $310 as of the last time I checked in order to seek expungement from the court in which they were convicted. In this case, if there were any complicating issues, the district court specifically retained jurisdiction to be able to address those. None have come to light. The district court's going to be the expunging court as opposed to the state administration? Yes, Your Honor. This is a remedy to a violation of federal law. I understand that. That might be a basis for expungement, but you said, for instance, one of the requirements is the applicant could not have committed another crime. And the question is, how is the district court giving honor to that? That would be if an individual sought expungement on the grounds permitted under South Carolina's expungement statute. Well, that's what we're talking about. Respectfully, Your Honor, I don't think we are. The basis for expungement here is the finding of a constitutional violation. The courts are in broad agreement that expungement is an appropriate remedy where an arrest occurred under an unconstitutional statute. And that remedy flows from the federal constitutional violation, which as the Supreme Court found in Felder versus Casey, just for example, isn't limited or constrained by particular state procedures. Well, we have here, we have a conviction of SP. And the court is now going to set aside that conviction. Is that what you're saying? Even though that person was convicted under South Carolina law and had the opportunity to raise the constitutional defense. Is this a problem where the federal courts are telling the state courts are going back and undoing state criminal convictions? No, Your Honor, it's weird. I thought you were forward looking and using that as a basis. Yes, Your Honor. And if you're doing that, then you can't go back and expunge. Well, and this is where the expungement shorthand is important to recognize because we are not asking the district court didn't order vacator of any sentence. It's the prohibition against forward looking use of the records. Well, what about SP? Is her record being expunged? Her record would be expunged to the extent of forward looking, but there's no... Well, she was already convicted. And the question is, we don't know whether she committed another crime. We don't know whether she satisfied the other criteria. So basically a federal court is vacating a state court criminal trial. A vacator, again, is not an issue here. There's no question or concern with SP serving out whatever terms came from the district court there. The question is the ongoing reliance. What if she was still in prison? What if she was still in prison right now? What would our ruling have to be? I wouldn't want to speculate. She's not in prison. Again, it raises the principle. It raises the principle. In other words, basically, you would have to bring a 2254, right? I wouldn't want to speculate, Your Honor. There's no indication in the record that any of the students are incarcerated. If they were, that would be an issue at the first instance of fact for the district court to consider as it indicated retaining jurisdiction to address any issues in the case. But that's simply not the facts that we have here. It hasn't been raised. It wasn't the case with SP. And there is no order to vacate any prior sentence from South Carolina courts. And I see that I've used my time up there. Okay. All right. Thank you. All right. We have some rebuttal, do we, Mr. Smith? Yes, Your Honor. First, I'd like to talk briefly about class certification. We believe that there is no commonality. There's no typicality. And the relief does not benefit the whole class. And some of these reasons were touched on in the argument with appellees. We've got class- I gather that the class is really defined by anybody who's in school against whom these statutes could be enforced. Yes, Your Honor. And no other criteria. In other words, it's a little bit like saying the whole state of Yes, Your Honor. And in fact, with the class of 800,000 school students in South Carolina, that's bigger than the population of some states, I believe. There's not the same injury within the class. And with respect to the class numbers, there are dissimilarities with it. As we point out with the statistics, less than one-seventh of 1% of the students have been charged. There's- Well, it could be also the Supreme Court has allowed that if somebody is threatened or is engaging in conduct that could call on it. But we don't have that as defined as part of the class here. The class is defined simply as students. That's correct, Your Honor. Well, Counsel, isn't that because of the sort of unique injury we recognized in Kenny? We held that students in these schools do have sort of a cognizable injury because they don't know where the line is. Not like if you shoot a gun while you're intoxicated, but in the mine run of cases, sort of normal student conduct, they don't know where the line is between what will get them detention and what will get them a prison term. And as a result, they all suffer sort of an ongoing injury in this moment of being subject to subjective enforcement and chilling their speech as a response. So I think once we have Kenny, that's why I sort of started with Kenny. Once we have Kenny, I guess I don't really see the problem with the class in this case. Well, that was for purposes, as Your Honor knows, of determining standing. It's not with regard to the- But it identified the injury, said it was cognizable, and now these class  But it's really the class representatives who are asserting that on the benefit as to the whole class. And if you look at the whole class, they're not, in fact, suffering the injury because they're not being charged. They're not going through- But that's not the injury from Kenny. That would be right except for Kenny. And Kenny, we said that's not the only injury. There's an additional cognizable injury that is suffered by people who never get charged. Respectfully, Your Honor, I don't believe that that is controlling with respect to the class certification, with respect to the merits of this case. And I think, in addition, that the plaintiffs cite no case, I believe, that shows that all class members are threatened in this situation. That the vast majority of students who do their schoolwork and behave are not threatened. In fact, the law is protective of those students. It protects them from the behavior that is covered by the disturbing the school statute and the disorderly conduct statute. And certainly, in addition to the problems with commonality, there's no typicality here. There is certainly, as a lot of the focus has been on the behavior of SP, certainly, I hope that that is not typical behavior of South Carolina students. The statistics indicate that it is not. The Supreme Court put this to rest. I mean, in its Anthony case, they basically said, when you're challenging the statute on this, there has to be an intention to engage in a course of conduct arguably affected with a constitutional interest, but prescribed by a statute. And there exists a credible set of prosecution there under. And then they say, where threatened action by the government is concerned, they give them standing. And that, to me, is, in other words, you don't have a class of people that could be charged under a statute. And you have to have a imminent threat of prosecution. I think we would end up having every case, class action, every case where a person was subject to its laws. I agree, Your Honor. We believe also that the relief here, as I said, does not benefit the whole class. I'd like to talk just briefly about expungement, the class-wide expungement. Your Honor had questions about expungement procedure in South Carolina. In the joint appendix at 225 and 226, we set forth that procedure here. In effect, this order granting sweeping expungement, while it applies to record, keep it in effect without vacating these sentences. In practicality, it does, because it's off the records except for the limited purposes for which records can be retained. The cases that have been- Is it a requirement under South Carolina law that before you have expungement there, the criminal conviction has to be vacated? I don't believe so. A person may not petition if the person's had a prior adjudication for an offense committed by an adult, a prosecution filed an objection to it. So, it would be a one offense type application, I believe. My question is, though, before the state expunges records, does the record have to relate to a conviction that's been vacated? It says the person has been taken into custody for a charge with or adjudicated delinquent. So, it's got an or in there. May petition for the court expunging all official records relating to being taken into custody. I haven't really looked at it, Your Honor. I don't want to concede something, but at a glance in here, it does appear to apply to somebody who was taken into custody but not adjudicated delinquent. The class cases granting expungement have been mass arrest cases in which there's a similar conduct all at the same time. That's not what we have here, Your Honor. I see my time's up. If there are any other questions, I'll sit down. Thank you, Mr. Smith. I want to thank both counsel for their arguments. Our practices, I don't know if you're in the courtroom, is to come down and greet counsel. This is a Fourth Circuit tradition that was initiated by Judge Parker in the 1930s. I think our court has remained unique in that regard. It's a little bit of an icon and we hate to give it up, but it's only temporarily in view of the pandemic conditions. So when you come back, we'll shake your hands, we'll greet you and hug you and anything else you want. Thank you for your arguments.
judges: Paul V. Niemeyer, Pamela A. Harris, Toby J. Heytens